IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELMO RAMIREZ-ISIDOR,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [25] MOTION TO DISMISS**<br><br>Case No. 4:20-cr-00079-DN-PK-1<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Defendant Elmo Ramirez-Isidor ("Ramirez") filed a motion to dismiss (the "Motion")[1] his indictment on the grounds that the removal order underlying the charges against him is invalid. Because Ramirez is barred from collaterally attacking the removal order in this case, the Motion[1] is DENIED.

## BACKGROUND

Ramirez was born on March 7, 1986 in Mexico.[2] In June 2010, Ramirez encountered an immigration officer in the United States and was granted an alleged voluntary return to Mexico.[3] After returning to Mexico, Ramirez was allegedly kidnapped and taken into a van where he was interrogated, beaten, and subsequently dropped off "almost in front of a police station" and was

---

[1] Docket no. 25 ("Motion"), filed December 17, 2020; *see* United States' Response to Defendant's Motion to Dismiss Indictment, docket no. 31, filed January 19, 2021 ("Response"); Defendant's Reply in Support of Defendant's Motion to Dismiss, docket no. 37, filed February 17, 2021 ("Reply").

[2] Motion, at 2; Response, at 2; Affidavit, Exhibit A, docket no. 25-2, filed Dec. 17, 2020 ("Affidavit"), at ¶ 1.

[3] Motion, at 2; Response, at 2-3; Affidavit, at ¶¶ 5-6.

threatened with death should he tell anyone about the incident.[4] Because of the alleged kidnapping, Ramirez remained in Mexico in hiding until he returned to the United States.[5]

On January 26, 2014, Ramirez was apprehended along with six other individuals near Naco, Arizona.[6] He was issued an expedited removal and deported on January 27, 2014 (the "Removal Order" or "Removal Proceeding").[7]

Less than a year later, on January 1, 2015, Ramirez was arrested in North Carolina for driving while under the influence, driving on a revoked license, and giving fictitious information to an officer.[8] After pleading guilty to the charge of giving fictitious information to an officer and serving a 42-day sentence, Ramirez was again removed from the United States on August 25, 2015 pursuant to reinstatement of the Removal Order.[9]

Ramirez re-entered the United States again and was apprehended in early March, 2018.[10] The immigration officials again reinstated the Removal Order and deported Ramirez on March 8, 2018.[11]

---

[4] Affidavit, at ¶¶ 6-8.

[5] Affidavit, at ¶ 10.

[6] Motion, at 3-4; Response, Exhibit 9, docket no. 31-10, filed Jan. 19, 2021, at 3.

[7] Motion, at 4; Response, at 3-4.

[8] Response, Exhibit 18, docket no. 31-19, filed Jan. 19, 2021, at 23.

[9] *Id*; Response, Exhibit 15, docket no. 31-16, filed Jan. 19, 2021; Response, Exhibit 16, docket no. 31-17, filed Jan. 19, 2021; Response, Exhibit 17, docket no. 31-18, filed Jan. 19, 2021; Response, Exhibit 18, docket no. 31-19, filed Jan. 19, 2021.

[10] Motion, at 5; Response, at 5.

[11] *Id.*

Ramirez again re-entered the United States and was apprehended on July 17, 2020 in Washington County, Utah.[12] On July 21, 2020, the United States filed a felony information against Ramirez for one count of reentry of a previously removed alien under 8 U.S.C. § 1326.[13]

Ramirez was arraigned on August 3, 2020 and entered a plea of not guilty.[14] Ramirez filed the Motion on December 17, 2020,[15] the United States filed its response to Ramirez's Motion on January 19, 2021 ("Response"),[16] and Ramirez filed a reply on February 17, 2020 ("Reply").[17] The Motion is the first time Ramirez has challenged the validity of the Removal Order.

## DISCUSSION

Ramirez argues that (1) with each of his four removals from the United States, he never knowingly or voluntarily waived his right to a hearing with an immigration judge because either the immigration officials coerced him into signing the waiver, or they signed for him with a false print signature;[18] (2) with his 2014, 2015 and 2018 removals, although he told immigration officers that he was afraid to return to Mexico because of the kidnapping, he was not referred to

---

[12] *Id.*

[13] Information, docket no. 1, filed July. 21, 2020 ("Information").

[14] Minute Entry, docket no. 9, filed Aug. 3, 2020.

[15] Motion.

[16] Response.

[17] Reply.

[18] Ramirez initially argued in his Motion that the 2010 removal was not voluntary because he might have been in the country continuously for 10 years and so might have been eligible for cancellation of removal. *See* Motion, at 1013. However, the opposition correctly argues that an alien facing deportation in the 10th Circuit does not have a constitutional right to information about discretionary forms of relief. *United States v. Aguirre-Tello,* 353 F.3d 1199, 1205 (10th Cir. 2004); *see also United States v. Chavez-Alonso,* 431 F.3d 726, 728 (10th Cir. 2005). Because Ramirez changes the argument in his Reply by asserting that his argument about the 2010 removal is the same argument about the 2014, 2015, and 2018 removals, namely that any waiver of rights he made was not knowing and voluntary and that "he was inappropriately deprived of the opportunity to see an asylum officer or an immigration judge in the first instance," we do not address further the 2010 removal. Reply at 8.

an asylum officer; and (3) the Removal Order was fundamentally unfair because Ramirez never waived his right to a hearing and he was denied an interview with an asylum officer.

Although the government has the burden of proving beyond a reasonable doubt all elements of the charges against Ramirez, there is a rebuttable presumption that the order of removal in the immigration proceeding was valid.[19] To overcome this presumption, Ramirez has the burden of proving that: (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) the proceeding in "which the order was issued improperly deprived [him] of the opportunity for judicial review"; *and* (3) "entry of the order was fundamentally unfair."[20] Ramirez must prove all three prongs of § 1326(d). If he fails any one of the prongs, he is barred from his collateral attack.

Ramirez cannot rebut the presumption of the order's validity because:

(1) Ramirez did not exhaust administrative remedies that were available to seek relief against the Removal Order.

Ramirez's allegations of immigration officials coercing him into waiving his rights, not translating documents, and falsely signing for him are supported solely by his affidavit.[21] In *United States v. Krejcarek*, the 10th circuit said "[s]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded prior convictions."[22] In *Krejcarek*, the defendant argued that his waivers of counsel

---

[19] *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010).

[20] 8 U.S.C. § 1326(d).

[21] Note that Ramirez has cited secondary sources of research by different non-profit institutions about deportation proceedings and an ACLU press release about a class action settlement that alleged deceptive and coercive practices by immigration officers in Southern California. As these sources are not binding precedent, they cannot influence this opinion.

[22] 453 F.3d 1290, 1297 (10th Cir. 2006).

during two prior convictions were involuntary, providing only an affidavit as evidence, which the court found insufficient when the record otherwise showed his waivers were voluntary.[23]

Ramirez's bare assertions that immigration officials coerced him into waiving his rights during four different immigration encounters and not translating or communicating documents each time is insufficient evidence to rebut the presumption of validity. As in *Krejcarek*, the record directly contradicts Ramirez's assertions. The government has provided the Notice of Rights from the 2014 Removal Proceeding which Ramirez attacks as the basis of all his subsequent removals.[24] The 2014 Notice of Rights was provided to Ramirez in Spanish, and he ticked the box waiving his right to a hearing and signed in his cursive signature.[25] The government also provided both English and Spanish Notice of Rights that Ramirez signed in 2010[26] (directly contradicting Ramirez's assertion that this notice was not provided to him)[27] and also in 2015.[28] As Ramirez must attack the 2014 Removal Order, and we find the Removal Order to be valid, and as Ramirez's "post-2014 removals do not, in themselves, speak to the underlying fairness of his 2014 removal"[29], we need not address those removals further. However, we

---

[23] *Id* at 1297-9.

[24] Response, Exhibit 5, docket no. 31-6, filed Jan. 19, 2021.

[25] *Id.*

[26] Response, Exhibit 1, docket no. 31-2, filed Jan. 19, 2021. Note that Ramirez argues that any documents produced by the government to oppose his Motion should not be allowed as evidence if the government did not produce those documents during discovery. Because the documents Ramirez complains about only became relevant because of the Motion, the documents produced by the government in its opposition are accepted as evidence for the purposes of the Motion.

[27] Motion, at 12. We do not address Ramirez's argument that Form I-826 is legally insufficient, as there is no binding precedent to support this.

[28] Response, Exhibit 12, docket no. 31-13, filed Jan. 19, 2021.

[29] Motion, at 17.

briefly address Ramirez's assertion that he never signs in print,[30] and so any print signatures are forgeries.

The government provided a signature comparison in its Response (the "Signature Exhibit").[31] Without the input of handwriting experts, the Signature Exhibit shows what appears to be the same print signature used in 2010, 2015, and 2018.[32] It is unlikely that immigration officials at three different time periods and in different locations were orchestrating such a fraud against Ramirez, using the same forged signature and throwing in his cursive signature for good measure on some of the documents during three different time periods.[33] If this is what Ramirez is asserting, he must provide more evidence than simply saying it is so. Ramirez's bare assertions that any print signatures are forgeries is insufficient evidence to overcome the presumption that the record is valid.

Ramirez has also argued that "the failure to exhaust administrative remedies may be excused when such a waiver is not made "knowingly.""[34] Because Ramirez has not shown that his waiver was not knowing or voluntary, we need not address that argument further. Ramirez has failed the first prong of § 1326(d).

---

[30] Motion, at 5; Affidavit, at ¶ 16.

[31] Exhibit 27, docket no. 31-28, filed Jan. 19, 2021.

[32] Id.

[33] Response, Exhibit 26, docket no. 31-27, at 1, showing his print signature on the Form I-2015 Warrant of Removal/Deportation on March 8, 2018 and his cursive signature on the Form I-871 Notice of Intent/Decision to Reinstate Prior Order, also dated March 8, 2018.

[34] Motion, at 9.

(2) The proceeding in which the order of removal was issued did not deprive Ramirez of the opportunity for judicial review.

Again, as Ramirez knowingly or voluntarily waived his right to a hearing, he has not shown that he was deprived of the opportunity for judicial review, and so he fails the second prong of § 1326(d).

(3) Ramirez has failed to establish that entry of the order was fundamentally unfair.

That is, he has failed to show that entry of the order violated his due process[35] rights *and* resulted in prejudice to him.[36] Ramirez argues that because he was allegedly denied the right to see an asylum officer and immigration judge, that this denial made the entry of the order fundamentally unfair.[37]

Ramirez has failed to show that he was denied the right to see an immigration judge. Ramirez's contention that he was denied the right to see an asylum officer is also not supported by the record. The government provided a record of the immigration interview from the 2010 encounter where Ramirez said he had no fear of persecution or torture if he were removed from the United States, which Ramirez signed.[38] The government also provided a record of Ramirez's sworn statement from the 2014 removal proceedings where Ramirez testified that he entered the United States to find work,[39] that he planned to stay for two years,[40] and that he had no fear or

---

[35] The essence of due process is notice of a charge and the opportunity to be heard. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 325 (10th Cir. 1984). Ramirez received both of these in the immigration proceeding.

[36] *See United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004). Prejudice in this context is a "reasonable likelihood that, but for the errors complained of, [the alien] would not have been deported." *Id.* at 1208. There is no evidence of prejudice to Ramirez.

[37] Reply at 16.

[38] Response, Exhibit 3, docket no. 31-4, filed Jan. 19, 2021.

[39] Response, Exhibit 7, docket no. 31-8, filed Jan. 19, 2021, at 3.

[40] *Id.*

7

concern of returning to Mexico and did not believe he would not be harmed if he returned to Mexico.[41] The narrative in Form I-831 from the 2015 encounter documents that Ramirez denied any fear of returning to Mexico,[42] and again, during the 2018 encounter, Ramirez said that he had no fear of returning to Mexico.[43] Again, there is no evidence save Ramirez's Affidavit that he actually expressed fears at the time of his encounters with the immigration officials.

Even if Ramirez had been denied the right to see an asylum officer, asylum is a form of discretionary relief,[44] and aliens do not have a constitutional right to be informed of discretionary relief.[45] Additionally, Ramirez does not explain why he did not apply for asylum from Mexico after he was deported in 2014. Because Ramirez has shown no due process violation, there is no need to address prejudice, and he fails the third prong of § 1326(d).

Because Ramirez has failed, not just one prong of § 1326(d), which is all that is required to bar his collateral attack, but all three prongs of § 1326(d), Ramirez's Motion must be denied.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED.

Signed March 3, 2021.

BY THE COURT:

David Nuffer
United States District Judge

---

[41] Response, Exhibit 8, docket no. 31-9, filed Jan. 19, 2021; *see also* narrative, Exhibit 9, docket no. 31-10, at 3.

[42] Exhibit 18, docket no. 31-19, filed Jan. 19, 2021, at 3.

[43] Response, Exhibit 21, docket no. 31-22, filed Jan. 19, 2021, at 2. Note that Ramirez initialed this document rather than signed it.

[44] *I.N.S. v. Cardoza-Fonseca,* 480 U.S. 421, 4278 (1987); *Elzour v. Ashcroft,* 378 F.3d 1143, 11489 (10th Cir. 2004).

[45] *United States v. Aguirre-Tello,* 353 F.3d 1199, 1205 (10th Cir. 2004); *see also United States v. Chavez-Alonso,* 431 F.3d 726, 728 (10th Cir. 2005).